<pre>
1           IN THE UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF TENNESSEE
2                   NASHVILLE DIVISION

3     UNITED STATES OF AMERICA,      )
                                     )
4                     Plaintiff,     )
                                     ) Case No.
5           v.                       ) 3:17-CR-00044-3
                                     )
6     ANDREW RYAN LESLIE,            ) CHIEF JUDGE CRENSHAW
                                     )
7                     Defendant.     )
                                     )
8                                    )
  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
9
                        BEFORE THE HONORABLE
10
        CHIEF DISTRICT JUDGE WAVERLY D. CRENSHAW, JR.
11
                   TRANSCRIPT OF PROCEEDINGS
12
                       November 16, 2018
13    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

14  APPEARANCES:

15          For the Plaintiff:  Ms. S. Carran Daughtrey
                                110 Ninth Avenue, S., Suite A961
16                              Nashville, Tennessee 37203

17
            For the Defendant:  Ms. Jennifer L. Thompson
18                              810 Broadway, Suite 305
                                Nashville, Tennessee 37203
19

20

21

22

23  PREPARED BY:
                    LISE S. MATTHEWS, RMR, CRR, CRC
24                    Official Court Reporter
                      801 Broadway, Room A839
25                    Nashville, TN 37203
                 lise_matthews@tnmd.uscourts.gov
</pre>

1          The above-styled cause came on to be heard on

2    November 16, 2018, before the Honorable Waverly D. Crenshaw,

3    Jr., Chief District Judge, when the following proceedings

4    were had, to-wit:

5              THE COURT:  All right.  Be seated.

6              All right.  We're back on Case 17-44, United of

7    America versus Andrew Ryan Leslie, and Mr. Leslie is here.

8    If counsel can introduce yourselves one more time.

9              MS. DAUGHTREY:  Carrie Daughtrey and Byron Jones

10   for the United States, Your Honor.

11             MS. THOMPSON:  Jennifer Thompson for Mr. Andrew

12   Leslie.

13             THE COURT:  All right.  Mr. Leslie, I think I need

14   you to come back to the podium, and we'll take up where we

15   stopped.  I hope you have a copy of the factual basis that

16   was read to the Court.  And -- do you have that document?

17             MS. THOMPSON:  I think I have the factual basis

18   over here.

19             THE COURT:  The one that was read to the Court on

20   Wednesday.

21             (Respite.)

22             MS. THOMPSON:  And then we also have our factual

23   basis that the defendant -- we've presented to the government

24   and government I think had looked at it and it --

25             THE COURT:  Okay.

```
1              MS. THOMPSON:  -- agreed to it.
2              THE COURT:  All right.  So Mr. Falte [sic], since
3     Wednesday have you had a chance to read this document?
4              THE DEFENDANT:  The factual basis?
5              THE COURT:  Yes.
6              THE DEFENDANT:  That the prosecutor submitted?
7              THE COURT:  Yes.
8              THE DEFENDANT:  Just right after court that day me
9     and my attorney went over it.
10             THE COURT:  Okay.  Do you need more time to do
11    that?
12             THE DEFENDANT:  No, sir.
13             THE COURT:  So having read the factual basis that
14    was read to the Court, is the information in there that
15    pertains to you and your conduct correct?
16             THE DEFENDANT:  Well, Your Honor, me and my
17    attorney have gone over additional factual basis that we are
18    willing to admit to instead of what the prosecutor put in.
19             THE COURT:  Okay.  Well, I want to deal with the
20    one that was read to the Court.  Because that's all I know.
21    So as to what was read to the Court, where do you differ with
22    it, if at all?
23             MS. THOMPSON:  Well, Your Honor, it's our
24    position -- and I have advised Mr. Leslie that it would be --
25    it could be considered perjury, or perhaps obstruction of
```

justice, if he stood in front of the Court and knowingly
denied facts that he believes are true.  On the other hand,
he has a right to require the Government to be held to their
burden of proof in terms of proving enhanced sentencing
facts.  So there were some facts that the Government
mentioned in their plea that he's willing to admit to -- or
in their factual basis that he's willing to admit to.

THE COURT:  Well, let's do it this way.

Do you have page 1 in front of you?

THE DEFENDANT:  Yes, sir.

THE COURT:  What on page 1 do you disagree with,
if anything?

MS. THOMPSON:  So -- this is --

THE COURT:  We're just looking at page 1.

MS. THOMPSON:  Right.

THE COURT:  Tell me what on page 1 you believe,
Mr. Leslie, is not true and correct?

THE DEFENDANT:  Umm.

MS. THOMPSON:  So, Your Honor, what if there's a
fact on page 1 that is possibly true but Mr. Leslie doesn't
want to admit it because he doesn't want that to be -- he
doesn't want it to be a sentencing enhancement automatically
that the Government doesn't have to prove?

THE COURT:  All right.

MS. THOMPSON:  So let's say -- for example -- and

1 then there's some facts he wouldn't necessarily have

2 knowledge of, but let's say --

3          THE COURT:  Okay.  Ms. -- Ms. Thompson, let's --

4 we're not going to be here all night.  Okay.

5          So go to page 1, Mr. Leslie.  Do you see the first

6 paragraph?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Number 1, is there anything in the

9 first paragraph, number 1, that you disagree with?

10          THE DEFENDANT:  Umm.

11          MS. THOMPSON:  Okay.  Your Honor --

12          THE COURT:  I'm going to -- you need to let him --

13 no.  I've gone -- I've given you enough.  I've been patient.

14 This is not difficult.  You -- at sentencing you can raise

15 all these issues.  You can raise all these issues at

16 sentencing.  But for purposes of today I need to know the

17 facts that he's agreeing to so I can make a determination

18 that the elements have been satisfied.  And that's not going

19 to get done with you keep interrupting him.  I'm trying to do

20 this as considerate -- I appreciate, Mr. Leslie, you -- you

21 have some difference with it.

22          THE DEFENDANT:  (Defendant moves head up and

23 down.)

24          THE COURT:  And I want you to preserve those

25 differences, but I have a job to do.  And I need to hear from

1  you, not your lawyer.  So in paragraph 1, what, if anything,
2  do you disagree with is not true?
3          THE DEFENDANT:  There are a few things I don't
4  know is true.
5          THE COURT:  That's fine.  You can tell me that.
6          THE DEFENDANT:  Such as I don't know when the
7  investigation began.  I do not know how many members were of
8  the website or who posted new content.  Also, I do not know
9  if new content was posted.  I know old content was posted.
10          THE COURT:  What do you call old content?
11          THE DEFENDANT:  Stuff that's been around for more
12  than a few years, stuff that's normal.  What the Government
13  usually tries to call "new" is stuff that's being actively
14  produced.  I -- I was never a member of -- of an enhanced
15  group, which would have access to that stuff.  So all the
16  stuff that I saw on the website was all stuff that's been
17  released for years and years.
18          THE COURT:  On the website?
19          THE DEFENDANT:  Yes.
20          THE COURT:  And that's where you saw it?
21          THE DEFENDANT:  Yes.
22          THE COURT:  Okay.  Anything else in paragraph 1?
23          THE DEFENDANT:  That is it for paragraph 1.
24          THE COURT:  Anything else in paragraph 2?
25          THE DEFENDANT:  In paragraph 2, I don't know how

1  many posts I made.  I know I made at least three posts.  I
2  don't know how many more.  I don't know if 44 is correct, if
3  that's excessive, or what.
4           THE COURT:  Okay.  So noted.
5           THE DEFENDANT:  Paragraph 2A, I believe there were
6  seven victims -- I -- or seven videos.  I do not know if the
7  baby was tied up, if she was vaginally penetrated.  I do not
8  know if the baby was crying in the video.  I also do not know
9  if my codefendant commented on that video.
10          THE COURT:  And by that you mean Mr. Falte?
11          THE DEFENDANT:  Yes.
12          THE COURT:  All right.  Anything else on page 1?
13          THE DEFENDANT:  Paragraph 2B, the date -- my
14 attorney has researched that.  The date is incorrect.
15          THE COURT:  What date should it be?
16          THE DEFENDANT:  I believe she says it's October --
17 or not October -- August 10th, 2015.
18          THE COURT:  All right.  Go ahead.
19          THE DEFENDANT:  Let's see.  Okay.  Then that's it
20 for that one.
21          We're moving to page 2 to finish off Paragraph 2B.
22 I apparently did comment that there were new pictures -- I
23 had --
24          THE COURT:  What paragraph are you on now?
25          DEFENDANT:  2A -- or 2B on the second page.

```
1              THE COURT:  Okay.  Go ahead.

2              THE DEFENDANT:  I am not sure if I said I would

3  upload later.  But I believe that I did say -- at least in

4  one instance, I did have more photos to upload.

5              THE COURT:  Okay.  Go ahead.

6              THE DEFENDANT:  In paragraph C, I do not know if

7  the baby was being anally penetrated.  All this happened

8  years ago.  So I -- my memory is horrible.

9              THE COURT:  Go ahead.

10             THE DEFENDANT:  We are done with 2 completely.

11             We're going to 3.  They say I facilitated the core

12 function of "Website A" by housing an approved uploading

13 location.  I did not do any sort of administrative duty on

14 this website.  Or at least I don't recall doing any

15 administrative duty.  I did run a file uploading -- or a file

16 hosting website on Tor, but it was not for this website.  It

17 was something I did completely separate.  I don't know what

18 was uploaded to that server.

19             THE COURT:  What about the last sentence of

20 paragraph 3?

21             THE DEFENDANT:  They said that I facilitated this

22 core function of "Website A".  I did not -- the -- the

23 definition I take of facilitated means I enforced this rule

24 or I had a duty to do this.  I did not do that.

25             THE COURT:  Anything else in that sentence?
```

1          THE DEFENDANT:  It said I housed an approved

2   uploading location.  I did run a file hosting server, but it

3   was not dedicated to child pornography.  It was not dedicated

4   to this website.  It was open for anyone to post to this

5   website.

6          THE COURT:  Okay.  As it pertains to "Website A",

7   if you didn't facilitate, did you do anything?

8          THE DEFENDANT:  I was only a member of the

9   website.

10          THE COURT:  Okay.

11          THE DEFENDANT:  Paragraph 4, it says I showed

12   Mr. Falte child pornography that included a video of me

13   penetrating an infant.  I did not share any videos.  I only

14   shared pictures.  And I am unsure if I penetrated the infant.

15          THE COURT:  Okay.

16          THE DEFENDANT:  I also do not know if forensic

17   interview -- or review of Falte's computer revealed child

18   pornography I shared with him.  I don't have knowledge --

19          THE COURT:  You're talking too fast now.

20          THE DEFENDANT:  Oh.  Sorry.

21          THE COURT:  You don't know what now?

22          THE DEFENDANT:  I do not know what the forensic

23   review of Falte's computer revealed.

24          THE COURT:  Okay.

25          Okay.  5.

1          THE DEFENDANT:  In paragraph 5, me and my attorney

2    have not been able to review that at all.  It's not in the

3    discovery whatsoever.

4          THE COURT:  So you don't have any knowledge of

5    paragraph 5?

6          THE DEFENDANT:  I don't have any factual

7    knowledge.

8          THE COURT:  Do you have any knowledge of paragraph

9    5?

10          THE DEFENDANT:  Yes, I did have another website.

11    It did not pertain to this case, however.  So I don't believe

12    it would be -- I think it would be prejudicial to include

13    this in the factual basis.

14          MS. THOMPSON:  Your Honor, this information in

15    paragraph 5 is information that I have not been able to

16    review.  It was not provided in the discovery.  There were

17    some references to another website that my client had, in

18    some of the reports, but specific information about that

19    website was not included in what I reviewed.

20          THE COURT:  Okay.  What about 6?

21          THE DEFENDANT:  When they -- I want to clarify a

22    sentence.  They -- on paragraph 6 it says when they arrived

23    Leslie had been in bed with a female toddler.  At that

24    instance, I was co-sleeping with the child.  We were not

25    having sexual relations in any way that night, the day

1 before, that day or anything.

2         THE COURT:  All right.  Number 7.

3         THE DEFENDANT:  And Number 7, I do not know how

4 many images were in my collection.  I know there was a

5 large -- I know it was a large amount.  But I don't know if

6 it was tens of thousands.  I want to say that is a little

7 high, but I do not know for sure.

8         THE COURT:  What's your prediction of what you

9 had?

10         THE DEFENDANT:  I would say I had probably about

11 100 GB's.  I don't know how many files that would contain.  I

12 just remember I saw --

13         THE COURT:  Okay.  Just slow down.  Don't talk so

14 fast.

15         THE DEFENDANT:  I'm sorry.

16         THE COURT:  Don't talk so fast.  100 GB's.

17         THE DEFENDANT:  I do want to say a lot of those

18 were duplicates.

19         THE COURT:  All right.  Anything else in 7?

20         THE DEFENDANT:  I do not know how many files I

21 produced myself.

22         THE COURT:  What's your estimate?

23         THE DEFENDANT:  I would say maybe 200.  That would

24 include a few videos and images.  And then me and my --

25         THE COURT:  Hold on.  Hold on.

```
1                    All right.  Anything else in 7?
2                    THE DEFENDANT:  Me and my attorney noticed a typo.
3       It says the forensic examiner palso -- it should be also.
4                    THE COURT:  In paragraph 7?
5                    THE DEFENDANT:  Yes.  It's on the fourth line.
6                    THE COURT:  Okay.  Noted.
7                    THE DEFENDANT:  I believe that's it for paragraph
8       7.
9                    And in paragraph 8 there is nothing incorrect in
10      that.
11                   THE COURT:  Okay.
12                   (Reporter interruption for clarification.)
13                   THE DEFENDANT:  I said in paragraph 8 there is
14      nothing incorrect.
15                   THE COURT:  All right.  Now, Ms. Thompson, you
16      said you had some additional things he wants to admit to.  Go
17      ahead.
18                   And I have your Document 117, which is not under
19      seal.
20                   MS. THOMPSON:  What's not under seal?
21                   THE COURT:  Document 117.  I denied your motion to
22      put it under seal.
23                   MS. THOMPSON:  Okay.
24                   Okay.  That's fine, Your Honor.  I had asked to
25      put it under seal because of the Court's prior order.
```

```
 1              THE COURT:  Okay.
 2              MS. THOMPSON:  This was referring to discovery
 3     materials --
 4              THE COURT:  We're in open court.  Nothing we're
 5     doing in here is --
 6              MS. THOMPSON:  Okay.
 7              THE COURT:  -- being hidden from the public.
 8              Go ahead.
 9              MS. THOMPSON:  So do you want to read that out
10     loud.
11              THE DEFENDANT:  The factual basis that me and my
12     attorney went over -- this is what we agreed to instead of
13     the prosecutor's.
14              THE COURT:  And I appreciate that.  But I need to
15     know, are you agreeing that this information --
16              THE DEFENDANT:  Yes, I am agreeing --
17              THE COURT:  Let me finish.
18              THE DEFENDANT:  All right.  Sorry.
19              THE COURT:  Please let me finish.
20              Are you agreeing that the information you're about
21     to read to me is true and correct?
22              THE DEFENDANT:  Yes, Your Honor.
23              THE COURT:  All right.  Go ahead.
24              THE DEFENDANT:  On or about August 5th, 2015, I
25     joined "Website A".
```

1           Between August 5th, 2015 and October 2nd, 2016, I,
2   with three other people, engaged in a child exploitation
3   enterprise.
4           "'Website A' was a website dedicated to the
5   advertisement and distribution of child pornography on the
6   Tor network.
7           On or about August 5th, 2015, I posted seven
8   videos in the baby and toddler section of "Website A".  The
9   file names were as follows:
10          Baby-Lexxa cum pussy and eating cum.avi.
11          Zero year old, some letters and numbers and then
12  tsexypee.
13          Baby_Lexxa- --
14          THE COURT:  Well -- no.  No.  You're going to have
15  to spell that out so the record can know.
16          THE DEFENDANT:  Okay.
17          THE COURT:  Spell it out.  O-y.
18          THE DEFENDANT:  On line B it's O-y -- or
19  oyo-g-02-02(tsexypee).avi.
20          On line C, it's Baby_Lexxa_Ass.avi.
21          On line D, it's Baby-Lexxa-GraggyCum.avi.
22          On line E, it's Baby- -- my bad.  That's a typo --
23  -Lexxa_Licky.avi.
24          On line F, Baby-Lexxa_SexyCum.avi.
25          G, it's [Toddler]-9babygirl)baby lexxa gets a pee

1  shower from dad.avi.

2          And then on or about August 10th, 2015, I posted

3  two videos in the "Babies & Toddlers" section of "Website A".

4  The file names are as follows:  SimBroGetsWet01.avi;

5  SimBro09-DoorStillClosed.avi

6          On or about August 12th, 2015, I posted one video

7  in the "Babies & Toddlers" section of "Website A".  The file

8  name was as follows Cookie Boy.avi.

9          The contents of all these videos and thumbnail

10 pictures posted by me meets the definition of child

11 pornography as defined in 18, U.S.C. Subsection 2256(8).

12          There were at least three different minors in the

13 depictions posted.

14          By posting a video I would post a thumbnail

15 picture of the video on "Website A".  The thumbnail picture

16 was viewable to members on "Website A".  This action meets

17 the statutory definition of statutory distribution under 18

18 U.S.C., Subsection 2252(a).  The posting would also contained

19 a link to the video file located on another website.  This

20 action meets the statutory definition of advertising under 18

21 U.S.C., Subsection 2251(d)(1)(A).

22          In the course of these actions, I conspired with

23 others to advertise child pornography on the internet.  In

24 the course of these actions, I also conspired with others to

25 distribute child pornography on the internet.

1       THE COURT: So in paragraph 4 of what you just

2 read, Document Number 117, are those seven posted videos what

3 you refer to in the Government's links to seven videos? Are

4 those the seven you're referring to?

5       THE DEFENDANT: I believe so, but I am not

6 entirely sure.

7       THE COURT: And have these seven videos been

8 delivered up to the Government? Does the Government have a

9 copy of these?

10       MS. DAUGHTREY: Yes. I believe that Ms. Thompson

11 saw those videos as part of discovery.

12       MS. THOMPSON: I haven't been able to see them

13 yet, Your Honor. They're still shipping these pictures up

14 from Florida. So. . . They haven't -- I haven't been able

15 to see them.

16       THE COURT: Do you have them in your possession

17 before today?

18       MS. THOMPSON: Oh, no, Your Honor. We're not

19 allowed to have the child pornography. And so we have to go

20 view it. I have requested viewing it. But they had to ship

21 it up here. Apparently none of the other attorneys requested

22 to view it so. . .

23       MS. DAUGHTREY: This -- this was a forensic exam

24 that was performed in Florida where he was arrested and

25 convicted of another related offense.

1          THE COURT:  Okay.  In paragraph 7, you say "the

2    contents of all the videos and thumbnail pictures."  Where

3    are the thumbnail pictures you're referring to?

4          THE DEFENDANT:  The thumbnail pictures were in the

5    post that I made on this website, along with a link to the

6    video.

7          THE COURT:  That you made to -- to -- to "Website

8    A"?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Okay.

11          MS. THOMPSON:  I got these names, Your Honor, from

12    file names that were provided in the discovery.  The files

13    themselves were not provided, but the file names were

14    provided.

15          THE COURT:  Well, he's just told me that the

16    information that you read is true and correct.  That's what's

17    important.

18          Go ahead, Ms. Daughtrey.

19          MS. DAUGHTREY:  I just want to make it clear that

20    the indictment is based on discovery that we have here, that

21    we -- that we have made available for Ms. Thompson.  She may

22    not have looked at these particular files.  They probably

23    also are on all the forensic reports and evidence that was

24    seized from Mr. Leslie.  That's the stuff that she hasn't had

25    access to yet.  But none of our charges are based on things

1  that were -- came from that electronics.

2          This all is here.  I -- I just think that you

3  haven't seen it.  I know you've been over to look at some of

4  it.

5          MS. THOMPSON:  No.  He -- he said it wasn't here.

6          MS. DAUGHTREY:  These files?

7          MS. THOMPSON:  (Indicating affirmatively.)

8          MS. DAUGHTREY:  Okay.

9          All right.  I think that's not correct.

10          MS. THOMPSON:  Okay.

11          (Respite.)

12          THE COURT:  Okay.  Anything else?

13          MS. THOMPSON:  No, Your Honor.

14          THE COURT:  All right.  Anything else from the

15  Government?

16          MS. DAUGHTREY:  No, Your Honor.

17          THE COURT:  Okay.

18          All right.  Mr. Leslie, let me ask you again.  Do

19  you understand that by entering a guilty plea and my

20  acceptance of your guilty plea there will be no trial and

21  you're giving up forever the right to a trial and the other

22  constitutional and appellate rights that we've discussed?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  And again, do you understand that by

25  pleading guilty, aside from appealing your sentence, you

1 cannot come to any court and claim that you're not guilty or

2 that your rights have been violated?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  And having heard from me what your

5 rights are and what may occur if you plead guilty, do you

6 still want to give up your right to a trial and plead guilty?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  Then Mr. Leslie, how do you plead on

9 Counts One, Two, and Three?

10           THE DEFENDANT:  Guilty, Your Honor.

11           THE COURT:  Are you pleading guilty because you,

12 in fact, engaged in that criminal behavior?

13           THE DEFENDANT:  Yes, Your Honor.

14           THE COURT:  Are you pleading guilty because you

15 indeed engaged in behavior that -- and actions that

16 constitute violations of those statues?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  The Court has observed Mr. Leslie and

19 his answers to the questions.  I think he's in full

20 possession of his faculties and competent to plead guilty.

21 He's not under the apparent influence of any drugs, alcohol

22 or prescription medications.  He understands the nature of

23 the charge to which the plea is offered and the maximum

24 possible penalty.  He's waived his constitutional right to a

25 trial and the constitutional rights accorded all citizens

accused of a crime.  He's aware of the term -- he's aware
that he has no plea agreement.  And he's offered to plead
guilty knowingly, intelligently and voluntarily.  I find
there's a factual basis for the plea.  So the plea of guilty
is hereby accepted.  And Mr. Leslie, you're adjudged guilty
of Counts One, Two, and Three in the indictment.

So the next step is to set a sentencing hearing.
And I'm going to ask Ms. Daughtrey to help me.  When did I
set his co-defendants?

MS. DAUGHTREY:  You said that we should set aside
May 6th and 7th --

THE COURT:  Thank you.

MS. DAUGHTREY:  -- for all of them.

THE COURT:  Yeah.  I need you to set aside May 6th
and 7th.  And I'll -- once you all get the presentence
report, you'll be able to tell me how long each is going to
go.  And then I can give you a definite time and -- so
Mr. Leslie, your sentencing will take place on the 6th or the
7th.  And once your attorney tells me how much time you'll
need at the sentencing, I'll be able to give you a specific
time on those dates, and we'll proceed at sentencing.

Okay.  Any -- now Mr. Leslie, do you have any
questions about anything we discussed today or on Wednesday?

THE DEFENDANT:  I don't believe, Your Honor.

THE COURT:  Okay.  Do you have any questions about

1  what's going to happen after today?

2         THE DEFENDANT:  No.

3         THE COURT:  Okay.  Ms. Daughtrey?

4         MS. DAUGHTREY:  Nothing from the Government.

5         THE COURT:  Anything, Ms. Thompson?

6         MS. THOMPSON:  No, Your Honor.

7         THE COURT:  All right.  We'll -- sorry.  I will --

8  I'll sign the order accepting your guilty plea.  And we'll

9  enter an order on the sentencing.  Thanks.

10         (Court adjourned.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   REPORTER'S CERTIFICATE

 2

 3          I, Lise S. Matthews, Official Court Reporter for

 4   the United States District Court for the Middle District of

 5   Tennessee, with offices at Nashville, do hereby certify:

 6          That I reported on the Stenograph machine the

 7   proceedings held in open court on November 16, 2018, in the

 8   matter of UNITED STATES OF AMERICA v. ANDREW RYAN LESLIE,

 9   Case No. 3:17-CR-00044-3; that said proceedings in connection

10   with the hearing were reduced to typewritten form by me; and

11   that the foregoing transcript (pages 1 through 21) is a true

12   and accurate record of said proceedings.

13          This the 22nd day of December, 2018.

14

15                            /s/ Lise S. Matthews
                              LISE S. MATTHEWS, RMR, CRR, CRC
16                            Official Court Reporter

17

18

19

20

21

22

23

24

25
```