# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **ANDREW RYAN LESLIE** | No. 3:17-CR-00044-3 <br> CHIEF JUDGE CRENSHAW |

## DEFENDANT ANDREW RYAN LESLIE'S
## SENTENCING MEMORANDUM INCLUDING 18 U.S.C. §3553 FACTORS

Andrew Ryan Leslie, through Counsel, files this Sentencing Memorandum for the Court's consideration in connection with his upcoming sentencing on August 9, 2019.

**I.  Introduction**

As attorney for Mr. Leslie, this has been one of the most difficult sentencing hearings for which I have prepared. What makes it the difficult for me is not the set of shocking facts surrounding the crime, but a concern that I have that in striving to provide Mr. Leslie with my most zealous defense I will instead stir the ire of everyone involved to the extent that my representation actually ends up doing more harm than good for my client. In other words, that by trying humanize Mr. Leslie, attempting to hold the Government to its standard of proof, and arguing in his favor, emotions will run so high that Mr. Leslie will receive a more extensive sentence. I take my role as advocate and defense attorney very seriously. Conventional wisdom among defense attorneys often says that an attorney should never call out the facts of a child

pornography case lest the Court note some fact that it otherwise might have overlooked.

Mr. Leslie is a flesh and blood person[1] who has some very kind, good attributes in combination with some destructive, damaging sexual desires. He was only twenty years old in 2015, and is now exposed to potentially spending the rest of his life in prison, facing the government's proposed offense level of 42 and a criminal history category of II which would equal a sentencing range of 360 months to life. However, based on several factors expounded upon below, the defense asks the Court to impose an offense level of 35, a criminal history category of I and a sentence of 168 months. This will give Mr. Leslie, who by now is only twenty-four years old, a sentence that is appropriate when taken into account with the sentence of sixty years that he is already serving.

## II. Sentencing Factors

### A. The Nature and Circumstances of the Offense.

Mr. Leslie has admitted to the following facts: On or about August 5, 2015, Mr. Andrew Leslie joined "Website A." Between August 5, 2015 and October 2, 2016, Mr. Leslie, in concert with three other people, engaged in a child exploitation enterprise. "Website A" was a website dedicated to the advertisement and distribution of child pornography on the Tor network. On or about August 5, 2015, Mr. Leslie "posted" 7 videos in the "Babies & Toddlers" section of "Website A." The file names were as follows: Baby_■■■■■ c■■ on p■■■■ and eating c■■.avi, Oyo-g-02-02 (tsexypee).avi, Baby_■■■■■_A■■.avi, Baby_■■■■■_GrabbyC■■.avi, Baby_■■■■■_Licky.avi, Baby_■■■■■_SexyC■■.avi,

---

[1] Mr. Leslie has stated that he identifies as female. For clarity's sake, the defendant is referred to as male in this pleading.

[Toddler]-(babygirl) baby ■■■■ gets a pee shower from dad.avi. On or about August 10, 2015, Mr. Leslie "posted" 2 videos in the "Babies & Toddlers" section of "Website A." The file names were SimBroGetsWet01.avi and SimBro09 – DoorStillClosed.avi. On or about August 12, 2015, Mr. Leslie "posted" 1 video in the "Babies & Toddlers" section of "Website A." The file name was Cookie Boy.avi. The content of all of the videos and thumb-nail pictures posted by Mr. Leslie meets the definition of child pornography as defined in 18 USC §2256(8). There were at least 3 different minors in the depictions "posted." By "posting" a video, Mr. Leslie would post a thumb-nail picture of the video on "Website A." The thumb-nail picture was viewable to members on "Website A." This action meets the statutory definition of distribution under 18 USC §2252(a). The "posting" would also contain a link to the video file located on another website. This action meets the statutory definition of advertising under 18 USC §2251(d)(1)(A). In the course of these actions, Mr. Leslie conspired with others to advertise child pornography on the internet. In the course of these actions, Mr. Leslie conspired with others to distribute child pornography on the internet.

Beyond the facts listed above, the Court should not give much weight to the other facts in the case. Counsel will now explain why. Mr. Leslie's case from the Florida Middle District Federal Court and the case at bar are related to one another. (This issue is addressed in the Objections to the Presentence Report pleading.) Actions by Mr. Leslie's attorney in the Florida case have had a very negative impact on current counsel's ability to give Mr. Leslie quality representation in this matter.

Mr. Leslie was arrested and charged in the Florida Middle District Federal Court on related charges of production of child pornography. On October 18, 2016, law enforcement with the Department of Homeland Security executed a search warrant for Mr. Leslie's Florida home based on information it received from Mr. Patrick Dane Falte, co-defendant in this case. While searching Mr. Leslie's home, agents discovered a camera that contained sexually-abusive pornographic photographs of a child under four years of age. Agents determined that the adult in the photos was Mr. Leslie. Based on these pictures, Mr. Leslie was arrested. At the time of Mr. Leslie's arrest, he did not make any statements to law enforcement. Although this case at bar was still being investigated in Tennessee, Florida initiated federal charges for production of child pornography centered on the photos from the camera. After his arrest, Mr. Leslie was detained in Florida and put on suicide watch for an extended period of time. Because of his extreme mental distress, Mr. Leslie has a poorer memory of what occurred during that time. Mr. Leslie was represented by Mark J. Rosenblum, Esq., from Jacksonville, Florida. Unfamiliar with the judicial system, Leslie was completely dependent on advice from his attorney on how to best proceed in his case. Mr. Rosenblum advised Mr. Leslie to enter into a proffer agreement with the United States Attorney for the Florida Middle District. This written agreement[2] specifically excluded any protections for the crimes with which Mr. Leslie was being investigated, making the proffer agreement impotent. In paragraph 1 of the agreement, it states that Mr. Leslie was being investigated for potential "violations of 18 U.SC. §§2241, 2251, 2251A, and 2252, *et. seq.*, pertaining to the sexual abuse and exploitation of children." On the first paragraph of page

---

[2] The Proffer Agreement is attached as Exhibit 1.

3 of the letter, it says "this grant of use immunity also does not extend to crimes of violence . . . . You and your client understand that crimes of violence include, but are not limited to violations of 18 U.S.C. §§2241-2245, 2251, 2251A, 2252A(g)—including conspiracy to violate these sections, and aiding and abetting violations of these sections—as well as the rape or sexual abuse of a minor."  This same language is repeated in the last paragraph of page 3 and first paragraph of page 4.  Page 1, paragraph 2 of the agreement also required Mr. Leslie to answer all questions from the Government "completely and truthfully, and provide all information, documents, and records within your client's custody or control, or to which your client has access, that are related to the subject matter of the interview."  In the last paragraph of page 3, the agreement states that "this grant of use immunity DOES NOT extend to information contained on encrypted digital devices, or encrypted portions of digital devices, currently in the custody of law enforcement pursuant to the search of your client's residence conducted on October 18, 2016."

    While Mr. Leslie was not given any immunity for these devices, he was required to provide the Government with access to them so that the contents could be used against him.  The agreement goes on to say, in this same paragraph "[y]our client agrees to provide any necessary passwords or passphrases in order to decrypt any such devices [encrypted digital devices in the custody of law enforcement] and understand [sic] that your client may face prosecution, without limitation, based on information contained therein."

    Mr. Leslie gave an extended interview with the Government, in which he confessed to multiple bad acts and crimes, most of which were unknown to authorities at the time and would not have been discovered later.  Because of the ineffective assistance of his Florida

counsel and counsel's bad advice, there has been a lasting negative impact, from the defense's perspective on both the Florida case and this current case in the Tennessee Middle District. Counsel is now asking this Honorable Court to consider these factors when determining Mr. Leslie's sentence for this case.

Typically, in a proffer meeting between a criminal defendant and the government, the information exchanged is covered by a written, limited immunity agreement between the parties. A defendant will provide information to the government with the hopes of receiving benefits such as a shorter sentence or a favorable plea offer. A standard agreement requires the defendant to provide truthful information. In exchange, the government cannot introduce the statements and information provided during the proffer as evidence in the criminal case, including sentencing. The government can use the information as impeachment or rebuttal evidence if the defendant testifies at trial or sentencing contrary to the information from the proffer. A proffer agreement only binds the current jurisdiction, so in a case where there are investigations in multiple jurisdictions, it would be imperative to bind all possible jurisdictions to the agreement.

In this case, Mr. Leslie gave a proffer to the Government in mid-November, 2016. At that time, the Government was in possession of the photographs found on the camera at Mr. Leslie's home on October 18, 2016, information from "Website A," and information from co-defendant Dane Falte. The Government did not have any access to the information on Mr. Leslie's computer because it was encrypted.

It was ineffective assistance of counsel for Mr. Rosenblum to advice Mr. Leslie to participate in a proffer session in which the agreement specifically excluded all immunity for

information provided relating to the cases for which Mr. Leslie was being investigated. Had Mr. Leslie not had any proffer agreement with the Government during his discussions, his information might not have been admissible at trial based on Federal Rules of Evidence rule 408, 410, and Federal Rule of Criminal Procedure 11(f). In other words, Mr. Leslie would have had more protection had he made his statements in a plea negotiation session than during his proffer session.

The second reason that the Court should not give much weight to the additional factors is that the Government has failed to provide proof of these facts in the case discovery. Counsel is always very diligent in her cases and makes certain that any fact admitted by the defendant is supported by the evidence in the case. In this case, the Government failed to provide Counsel with the Defendant's statement made to law enforcement. Mr. Leslie was suffering from severe depression at the time and does not have a good memory of what was said nor any notes from the session. The Government is required under the Federal Rules of Criminal Procedure Rule 16 and the local rules of court to provide in discovery statements made by the defendant. In addition, the Government is required to provide any scientific reports, etc. prepared in the case. The Government did not provide some of the forensic computer reports or the NCMEC reports cited in the PSR. The result of this failure was to prevent Counsel from thoroughly reviewing all the relevant facts with Mr. Leslie and providing his with the most accurate legal advice with regards to sentencing. It is now too late for the Government to provide this information and its sanction must be the exclusion of these facts or in the least, the minimization of them.

**III.     History and Characteristics of Defendant**

Andrew Leslie, like Mr. Falte and Mr. Faulkner is a pedophile. He is compulsively, sexually attracted to children and always has been. Mr. Leslie says that he loves children and desperately wanted to become a mother. When he was about 10 years old he began to recognize his attraction to younger children and released that it was considered wrong by society, he did not know how to address it. Throughout his youth, he contemplated suicide. He fought his sexual desires and urges for years, trying to ignore them. He began to use the internet as a child and it was there that he discovered child pornography.

Since his arrest in 2016, Mr. Leslie has been steadfast in his desire to know why he is attracted to children and, more importantly, how to change. Mr. Leslie wants intensive sex offender treatment while in prison.

As stated above, Mr. Leslie cooperated with authorities after his arrest in Florida. He provided information and passwords to his electronic devices. His assistance was not be rewarded with a motion for downward departure under U.S.S.G. § 5K1.1.

Mr. Leslie understands that his actions merit a serious prison sentence. He feels incredible remorse for his victims. He hopes one day to start an organization to help pedophiles get help before they act on their attractions, something that he was never able to take advantage of.

Mr. Leslie was born in Jacksonville, Florida, following a one-time encounter between his mother and biological father. He did not meet and form a relationship with his father until he was 12. Mr. Leslie does not attribute any of his aberrant

behavior to his childhood, which he recalls as basically positive. His mother, Sharon Leslie, could not recall any episodes of physical trauma or abuse. She does recall his female cousins dressing him up as a girl when he was about five years old and her son verbalizing around the same age that he did not like having a penis.

By all accounts, Mr. Leslie was a contributing member of society throughout high school and into adulthood. He did not use drugs or commit even petty crimes. Letters from family and friends describe his helpfulness, compassion and attentiveness toward the needs of others. They are shocked that the polite and respectful young man, who assisted them or stood by them through various ordeals, committed these crimes. They are saddened they did not notice any red flags that might have alerted them to Mr. Leslie's internal struggles or even prevented his behavior from escalating to the point that it did. Yet, as true friends and family members do, they are standing by him even while acknowledging their horror at his behavior. Family photos provided by Sharon Leslie show a healthy, typical young boy. Tellingly, however, very few of them after early childhood show him smiling.

Mr. Leslie was a good student and graduated on time from Middleburg High School in 2013 with a 3.412 grade point average. A month after graduation, he started work as a software engineer, a job he held until his arrest. The position paid well enough that Mr. Leslie was able to buy his own home when he was 19 years old.

All of this general success in life masked the internal struggles and self-loathing Mr. Leslie felt. Mr. Leslie requests that his sentence include intensive psychosexual counseling and sex offender treatment.

## IV. Nature and Circumstances of the Offense and Avoiding Sentencing Disparities

Persons involved in Child Exploitation Enterprises often commit far more egregious misconduct, than Mr. Leslie has done in this case. Keep in mind that he has already been sentenced for the production of child pornography. In other CEE cases defendants have used the internet to lure children into sex, selling and mass distributing large quantities of images around the world for money, and producing bondage and masochism videos of tortured children, all cases that result in permanent mental and physical damage to the children. The statutory range must encompass and differentiate all of that conduct and those offenders. In this case, Mr. Leslie is charged with running a child pornography website. Therefore, while the conduct here merits a significant sentence, the conduct does not place this offense anywhere near the worst of people who run a CEE; therefore, the conduct does not merit the higher end of the punishment range.

There is also nothing about Mr. Leslie, as an offender, that merits the higher end of the statutory range. The government asks for second highest level of sentencing (360 months to life) for this young, first time offender, who caused lesser harm than many other like offenders, had no criminal history at the time of the offense, has shown some positive qualities and ability to make a positive, normal impact on society, is aware and ashamed of his sickness, and is more than willing to receive treatment and therapy to remedy it.

Federal courts sentenced 415 federal production offenders in 2016. Many had significant criminal history scores, up to and including Criminal History Category VI.

The entire body of such producers, including the worst of the worst offenses, and the worst of the worst offenders, received a mean sentence of 240 months, over ten years lower than the sentence the government recommends here.[3] That mean sentence represents a 59% below-Guidelines rate.[4] Even Category VI offenders, those with the longest and clearest pattern of repeated felony misconduct, received a mean sentence of "only" 301 months, five full years lower than what the government recommends for this first time offender.[5] With these facts as context, and given a statutory mandate to avoid unwarranted sentencing disparities, the government request for 360 months to life for this first time offender can only be viewed as an invitation for this Court to create an unwarranted disparity.

V.     Research Undermining the Validity of Sentencing Guidelines

Furthermore, the logic and applicability of sentencing enhancements related to offenses of this nature have recently come under scrutiny. While this sentencing involves Section 2G2.6 guidelines, it shares many of the same characteristics, enhancements, and, ultimately, flaws of the 2G2.2 guidelines which the Second Circuit Court of Appeals derided the "logic" and recommendations as irrational.

The *Dorvee* court specifically discovered that enhancements for: images involving pre-pubescent minors, the presence of more than 600 images, pictures of sadistic conduct, and the use of the computer had become "so run-of-the-mill" as to be "all but inherent to the crime of conviction."[6] The *Dorvee* court concluded that "the guideline governing 2G2.2" was

---

[3] United States Sentencing Commission, 2016 data file, USSCFY16.
[4] Id.
[5] *Id.*
[6] United States v. Dorvee, 616 F.3d 174, 186 (2d. Cir. 2010).

"fundamentally different from most," because "unless applied with great care, [it] can lead to unreasonable sentences that are inconsistent with what §3553 requires."[7]

Two years later, in a 468-page report to Congress, the Sentencing Commission agreed.[8] After years of study, the Commission observed that enhancements "originally intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders."[9] The Commission specifically identified the following enhancements as distorting the Guideline ranges:

1. Images of pre-pubescent children (Applied in 96.1% of cases)[10]
2. Use of a computer (Applied in 96.2% of cases)[11]
3. The number of images enhancement (Applied in 96.9% of cases)[12]
4. Distribution to another (Applied in 65.4% of cases);[13] and
5. The Sadistic/Masochistic Enhancement (Applied in 74.2% of cases).[14]

These enhancements were observed to produce a presumptive Guideline Range of 210-235 months for common, first-time offenders. The Commission further acknowledged that with these enhancements "now apply[ing] to most offenders," the guideline "fail[s] to differentiate among offenders in terms of their culpability,"[15] and "sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders,"[16] so that the "current guideline does not

---

[7] *Id.* at 182.
[8] *See* U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012) ["Child Porn Report"].
[9] *Id.* at xi
[10] *Id.* at xi
[11] *Id.* at xii
[12] *Id.* at xiii
[13] *Id.* at viii
[14] *Id.* at Table 8-1. Counsel notes that at the time, different circuits had different standards as to what qualified, with some circuits such as the 8th Circuit applying the enhancement to any physical contact involving a child under the age of 12.
[15] *Id.* at iii, xi; id. at 209, 323.
[16] *Id.* at xi

adequately distinguish among offenders regarding their culpability for their collecting behaviors."[17] In sum, the Commission agreed that the cumulative enhancements addressing the content and volume of images possessed "result in guideline ranges that are overly severe..."[18]

Parties to the system also discovered that earlier fears about the significance of image content had been overstated. Despite a shift in content from the 1980's to 2012 during which the "typical" child pornography case began "including images depicting prepubescent children engaging in sexually explicit conduct,"[19] a study of online child porn trading revealed that "more extreme" content in the modern "typical" case, and presence of "larger number of images" did not correlate to either increased deviance or criminality (i.e. dangerousness).[20] In other words, "the current guideline measures for offender culpability (e.g., for distribution of child pornography, number of images possessed, possession of sado-masochistic images) are generally not associated with significantly higher rates of [criminal sexually dangerous behavior]."[21]

## VI.   Conclusion

Mr. Leslie is a very young man. A sentence of 360 months to life is already longer than Mr. Leslie has been on this planet. During his lengthy incarceration, this Court can recommend that he receive sex offender counseling and treatment. There is every reason to think that he can and will benefit from those programs. A federal sentence cannot comport with the law if it driven solely by the moral outrage that guides the government recommendation; the law

---

[17] *Id.* at 323.
[18] *Id.*
[19] *Id.* at 84
[20] *See* Exhibit A at Page 121
[21] 2012 report at 204.

requires each court to take into consideration other factors, including criminal history and the treatment of other offenders around the country. The final sentence must avoid unwarranted sentencing disparities by adequately differentiating offenders based on conduct, harm, and rehabilitative potential. Using those factors, this Court should determine that a sentence of 168 months is significantly serious for this offense and offender.

Counsel also notes that the prison sentence is not the only component of the sentence, nor is it the end of the case for either this Court or Mr. Leslie. This Court can also impose up to lifetime supervision—which would provide a literal lifetime of opportunities for him to rehabilitate and prove himself, all while under the eye of trained, federal officers who can and will immediately report to the Court any concerns or conditions necessary to safeguard the community.

Respectfully submitted,

s/Jennifer Lynn Thompson
Jennifer Lynn Thompson
Tenn. BPR 18250
Attorney for Andrew Leslie
810 Broadway, Suite 305
(615) 601-2484 office
(615) 246-4111 fax
nashvilleattorney@gmail.com

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served by CMECF system to the following registered counsel of record and if not registered, via U.S. Mail:

| | |
|---|---|
| Carran Daughtrey | Byron Jones |
| Assistant United States Attorney | Assistant United States Attorney |
| Office of the United States Attorney | Office of the United States Attorney |
| 110 9th Avenue, S | 110 9th Avenue, S |
| Suite A-961 | Suite A-961 |
| Nashville, TN 37203-3870 | Nashville, TN 37203-3870 |

On this the 26th day of July, 2019.

                                                <u>/s/ Jennifer Lynn Thompson</u>
                                                Jennifer Lynn Thompson